IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| EDWIN MEYER and E.B. MEYER, INC., an Idaho corporation, doing business as MEYER INDUSTRIES, | ) ) ) ) ) ) | Case No. CV 05-176-S-MHW |
| Plaintiffs, | ) ) | |
| v. | ) ) | **MEMORANDUM DECISION AND ORDER** |
| RODEX SALES & SERVICES, LLC, an Oregon limited liability corporation, MALHEUR DEVELOPMENT, LLC, an Oregon limited liability corporation, DAN NEWTON, and Does 1-20, Inclusive, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Currently pending before the Court is Plaintiffs' Motion for Partial Summary Judgment as to Liability (Docket No. 16) filed July 14, 2006. For the following reasons, Plaintiffs' Motion is denied.

**I.**
**Background**

On May 4, 2005, Plaintiffs Edwin Meyer and E.B. Meyer, Inc., d/b/a Meyer Industries ("Meyer Inc."), (collectively, "Plaintiffs") filed this action against Rodex Sales & Service, LLC, Malheur Development, LLC, Dan Newton and Does 1-20 alleging invasion of privacy, violation of 35 U.S.C. § 292 by false marking in the promotion of products, violation of the Lanham Act

by misrepresentations in the promotion of products, civil conspiracy, violation of the Idaho

Competition Act and seeking an accounting and a preliminary and permanent injunction.

Dan Newton ("Newton") and Monte Meyer originally started a pest elimination company

called Rodex Industries, Inc. ("Rodex Industries").  Rodex Industries manufactured and sold a

product known as the Rodex 4000, a device patented by Monte Meyer and Newton.  Edwin

Meyer ("Meyer"), who was the son of Monte Meyer, got involved in the company in sales and

marketing around the years of 2001 to 2003.[1]  (Affidavit of Gery W. Edson, "Edson Aff.," ¶¶ 5-

6; Affidavit of Edwin Meyer in Support of Motion for Partial Summary Judgment, "Meyer Aff.,"

¶¶ 2-4.)  Meyer created an advertising/training video in which he appeared and demonstrated

how the Rodex 4000 worked ("Meyer video").  It was used to market and sell the product and to

educate consumers on its operation.  (Meyer Aff., ¶¶ 3-5.)

Rodex Industries eventually filed for bankruptcy.  At that time, Monte Meyer was no

longer associated with the company and Newton was the president and majority shareholder.

(Affidavit of Jim Stout in Opposition to Plaintiffs' Motion for Summary Judgment, "Stout Aff.,"

¶ 4; Edson Aff., ¶ 4.)  Rodex Industries' bankruptcy counsel, Gery Edson, learned subsequent to

his representation of the company in the bankruptcy proceeding that there had been numerous

transfers of assets by Newton to Meyer prior to the bankruptcy filing.  Once he learned of these

events, Mr. Edson informed Gary McClendon with the Office of the United States Trustee, Lois

Murphy, the Chapter 7 bankruptcy trustee of Rodex Industries, and Brad Andrews, Idaho State

Bar Counsel about them as he believes the pleadings and schedules in the Rodex Industries

bankruptcy case may have been inaccurate and should have included these transfers to Meyer.

---

[1]  Meyer claims he was an independent contractor of Rodex Industries whereas Defendant Rodex Sales and
Service claims he was an employee (a sales and marketing manager) of Rodex Industries.

**Memorandum Decision and Order - Page 2**

He also believes that these transactions with Meyer may qualify as transfers to an insider for less than fair consideration.  (Edson Aff., ¶ 7, Ex. A.)

According to Edson, approximately $185,000 of credit card accounts receivable, $30,000 in cash, and an unspecified amount of equipment and inventory were transferred to Meyer.  This was done with the understanding that Meyer would form a new company that would continue manufacturing and selling Rodex products and Meyer would later transfer a 51% controlling interest in the new entity to Newton after Newton's bankruptcy was final.  (Edson Aff., Ex. A.)  The bankruptcy filing of Rodex Industries took place on August 5, 2003.  Newton also personally filed for bankruptcy that same day.[2]  (Meyer Aff., ¶¶ 7-9.)  The understanding between Meyer and Newton never came to fruition as a disagreement between the two parties occurred after Meyer had already taken possession of the entity's assets.  Newton then approached Clair Havens about purchasing the general intangibles of Rodex Industries through the bankruptcy estate.  (Edson Aff., Ex. A.)  Clair Havens was a member of Malheur Development, LLC ("Malheur Development"), along with Duane Bellows.  (Stout Aff., ¶ 5.)  On December 12, 2003, with the permission of the bankruptcy trustee, Lois Murphy, and the secured creditor, Zion's Bank, Rodex Industries sold to Malheur Development "all right, title and interest in all intangible and intellectual property relating to or associated with Rodex and/or Rodex Industries, Inc.... including, but not limited to, all patents, trademarks...the right to manufacture, procure and/or produce Rodex products and/or use trade names or trademarks associated with Rodex and/or Rodex Industries."  (Stout Aff., ¶ 7, Ex. C.)  This sale was for approximately $500.

---

[2]  Plaintiffs have requested the Court take judicial notice of the following two bankruptcy filings: Rodex Industries, Inc., debtor, Chapter 7 bankruptcy proceeding filed on August 5, 2003 in Idaho as Case No. 03-2871 and Dan Newton, debtor, Chapter 7 bankruptcy proceeding filed on August 5, 2003, in Idaho as Case No. 03-2870.

(Edson Aff., Ex. B.)  Furthermore, on that same day, Newton individually transferred the same interest and rights to Malheur Development.  (Edson Aff., Ex. C.)  On December 22, 2003, Rodex Sales and Services, LLC ("RSS") was formed.  Mr. Havens and Mr. Bellows were members of this LLC.  (Stout Aff., ¶ 6.)

Approximately nine months later, on September 29, 2004, several transactions took place.  Mr. Havens and Mr. Bellows assigned 100% of their interest in RSS to Bill and Jim Stout.  (Stout Aff., ¶ 8, Ex. D.)  Malheur Development assigned to Bill and Jim Stout "all right, title, and interest in all intangible and intellectual property relating to or associated with Rodex and/or Rodex Industries Inc....including, but not limited to, all patents, trademarks,...the right to manufacture, procure and/or produce Rodex and/or use trade names or trademarks associated with Rodex and/or Rodex Industries, Inc."  (Stout Aff., ¶ 8, Ex. E.)  Additionally, Newton bought into RSS that same day, but currently is no longer a member of the company.  (Stout Aff., ¶ 8, Ex. F.)

Since December 2003, RSS has manufactured and marketed, throughout the United States, burrowing pest exterminating products similar in appearance to the Rodex Industries products.  These are called the Rodex 4000 Plus, Rodex 5000 Plus, and Rodex 6000.  Plaintiffs allege that RSS has held itself out to the general public as being the original Rodex Industries and has represented its products to be the products of the original Rodex Industries. (Meyer Aff., ¶¶ 12-13, Exs. B-G; Affidavit of Robert Bruno in Support of Motion for Partial Summary Judgment as to Liability, "Bruno Aff.," ¶¶ 5, 9, 13.)

Plaintiffs allege that RSS had made and/or implied by words and acts the following specific false and fraudulent representations: that RSS is the original Rodex Industries (Meyer

Aff., Ex. E.); that Rodex Industries had financial problems but did not file for bankruptcy; that

Rodex Industries took a year off to re-engineer its product lines (Meyer Aff., Ex. D); that

products re-engineered by Rodex Industries are the products advertised and sold by RSS; that the

product advertised and sold by RSS are patented (Meyer Aff., Exs. B-C); that Rodex is the

registered trademark of Rodex Sales & Service, LLC; that Meyer is associated with the products

manufactured and sold by RSS, implied through RSS's use of his image and demonstration of

the Rodex 4000 in the Meyer video, the RSS brochures and advertisements and use of the Nut

Grower article on its website, which features him. (Meyer Aff., ¶ 13, Exs. B-H.)

Plaintiffs also assert the following: that RSS created advertising brochures identical to

the original Rodex Industries advertising brochures (Meyer Aff., ¶ 15, Exs. B, C); that these

brochures include testimonials that describe the original Rodex 4000 which RSS and Newton

falsely represent as describing RSS's products (*Id*.); that the brochures and use of the Nut

Grower article include a fictional history of the Rodex 5000 Plus, as it is the actual history of the

Rodex 4000, which was manufactured by the original Rodex Industries (Meyer Aff., ¶ 17, Exs.

B, C, F and H); that the RSS brochures list the patent number issued for the Rodex 4000, but

identify that patent as covering the Rodex 5000 Plus and the Rodex 6000 (Meyer Aff., ¶ 18, Exs.

B and C.); and that RSS has marketed its products using the Meyer video created by Meyer in

which he demonstrates the operation of the Rodex 4000 but RSS has represented that the video

depicts the Rodex 5000 Plus and/or Rodex 6000 being operated.  (Meyer Aff., ¶ 19.)

Additionally, on its website, RSS offered a training video that showed Meyer

demonstrating the Rodex 4000 and by including this video on its website, Plaintiffs allege that

RSS is falsely implying that the video is a depiction of its products and that Meyer endorses

these products.   Meyer claims he has never consented to the use of his picture or demonstration of the Rodex 4000 to RSS.  (Meyer Aff., ¶ 20.)  Plaintiffs assert that at the World Ag Expo in 2004, Defendant Newton and other RSS representatives represented that the original company did not go bankrupt but that RSS is operating as the original Rodex Industries.  (Meyer Aff., ¶ 21.)  At other trade shows, Plaintiffs allege RSS has falsely represented that it has marketed and sold its products continuously for the past six years, thereby falsely implying that it is the original Rodex Industries.  (Meyer Aff., ¶¶ 22-23; Bruno Aff., ¶¶ 5, 9, 13.)  Additionally, RSS has posted on its website an Operators Manual for the Rodex 4000 even though it has never manufactured that product. (Meyer Aff., ¶ 24, Ex. I.)

Defendant RSS claims it holds the legal rights to the intangible assets of the now-bankrupt Rodex Industries, including patents, trade secrets, the right to "manufacture, procure, and/or produce Rodex products and/or use trade names or trademarks associated with Rodex Industries," the marketing tape in which Meyer appeared, and an "800" telephone number. (Defendant Rodex's Statement of Disputed Facts, ¶ 1.)  It also claims as holder of these intangible rights, it has a legal right to hold itself out as a successor to the original Rodex Industries.  (Stout Aff., ¶ 11; Defendant's Response to Plaintiff's Request for Admission Propounded to Defendant Rodex Sales and Service, LLC, First Set, "Request for Admission Response," No. 20.)  Defendant RSS further asserts that neither itself nor Meyer have any patent or trademark claim on their respective competing products and that both parties' products are based upon the Rodex 4000 that was protected by the now-lapsed patent held by the now-bankrupt Rodex Industries.  It further asserts that it has never claimed that the lapsed patent of the Rodex 4000 covered the products that it markets.  (Request for Admission Responses, Nos.

16, 26, 42, 43, 46, 47 and 48.)  It also asserts it does not pass off the goods of others as its own.

(Stout Aff., ¶ 12.)  RSS does admit that it has indicated in its marketing information that it has a

registered trademark in the name "Rodex."  (Request for Admission Response, No. 49.)  As for

the Meyer tape, RSS asserts that it acquired that video and used it from approximately December

2003 to November 2005 and it has since been edited and contains no appearance by, or reference

to, the likeness of Meyer.  (Stout Aff., ¶ 3.)  Additionally, it asserts that no marketing brochures

it has used have contained the likeness or name of Meyer since Bill and Jim Stout took over the

LLC.  Additionally, it asserts that its website, www.rodexsalesandservice.com,[3] contains no

reference to the name or likeness of Meyer, and that other than the temporary use of the Meyer

video, for purposes of marketing its own product, RSS has made no statement that disparages or

places Meyer in a false light.  (Stout Aff., ¶ 12.)

Plaintiffs moved for partial summary judgment as to liability with respect to their claims

for invasion of privacy, violation of the False Marking Act, and violation of the Lanham Act

(Docket No. 16) on July 14, 2006.

## II.
## Standard of Review

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56.

Rule 56, which provides in pertinent part, that judgment "shall be rendered forthwith if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

---

[3]  Plaintiffs refer to RSS's website as www.rodexindustries.com whereas RSS refers to its website as www.rodexsalesandservice.com.  Both of these websites do exist and appear to be the same.

**Memorandum Decision and Order - Page 7**

When reviewing a motion for summary judgment, the proper inquiry is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (1993). A moving party who does not bear the burden of proof at trial may show that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is not enough for the [non-moving] party to "rest on mere allegations or denials of his pleadings." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.,* at 250.

"When determining if a genuine factual issue . . . exists, . . . a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability." *Id.,* at 254. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

The Ninth Circuit has consistently applied the standard for granting summary judgment. *Musick v. Burke,* 913 F.2d 1390 (9th Cir. 1990); *Pelletier v. Federal Home Loan Bank,* 968 F.2d 865 (9th Cir. 1992); *Bieghler v. Kleppe,* 633 F.2d 531 (9th Cir. 1980).

**Memorandum Decision and Order - Page 8**

In determining whether a material fact exists, facts and inferences must be viewed most favorably to the non-moving party.  To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law.  *Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th. Cir. 1981).

The Ninth Circuit has emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact."  *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 500 (9th Cir. 1992).

> In order to withstand a motion for summary judgment, the non-moving party:  (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund,* 882 F.2d 371, 374 (9th Cir. 1989).

If one party moves for summary judgment and, at the hearing, it is made to appear from all the records, files, affidavits and documents presented that there is no genuine disputes respecting a material fact essential to the proof of the movant's case and that the case cannot be proved if a trial should be held, the court may grant summary judgment *sua sponte* to the non-moving party.  *Neal v. Shimoda*, 131 F.3d 818, 831-32, n. 16 (9th Cir. 1997); *see also Holmes v. Idaho Power Co. Security Plan for Senior Mgmt. Employees*, Case No. CV 03-514-S-EJL, *available at* 2005 WL 1863180 at *2.

**III.**
**Plaintiffs' Motion for Partial Summary Judgment as to Liability**

**A.      False Marking Act**

Plaintiffs argue that RSS has violated the False Marking Act, specifically 35 U.S.C.

§ 292(a), because from December 2003 to the present date, it has marketed and sold its products,

the Rodex 4000 Plus, the Rodex 5000 Plus, and the Rodex 6000, while representing to the

general public that these products are patented.  Also that it has ascribed to these products the

patent number that was issued for the Rodex 4000, a product manufactured and sold only by the

original Rodex Industries.  Plaintiffs argue that none of these products sold by RSS are patented

or trademarked.  Additionally, they urge that RSS has included the name Rodex as its registered

trademark on its marketing information, advertising and sales materials but does not have a

registered trademark in the Rodex name.  As well, Plaintiffs submit that those materials refer to

RSS as the original Rodex Industries, which it is not.

In response, Defendant RSS maintains that in order to violate the False Marking Act,

there must be an intent to deceive the public in patent mismarkings.  Also, it submits that

Plaintiffs have made no allegation that any products manufactured or sold by RSS have ever had

affixed to them the patent number for the Rodex 4000.  It maintains that RSS did purchase the

patent rights to the Rodex 4000 out of the bankruptcy estate of Rodex Industries and thus had

paramount right to the use of that patent.  The patent has now lapsed and although there were

some inadvertent references to the patent number in some marketing brochures, they have since

been removed.  Defendant RSS urges that Plaintiffs' False Marking Act claim must fail because

there is no evidence that shows the patent number was ever attached to any RSS products nor is

there any evidence that RSS intended to deceive the public.

1.      **Discussion**

35 U.S.C. § 292 provides in part:

> (a) Whoever, without the consent of the patentee, marks upon,...or
> uses in advertising in connection with anything...offered for
> sale...the name of the patentee, the patent number, or the words
> "patent,"...with the intent of...deceiving the public and inducing
> them to believe that the thing was...offered for sale...with the
> consent of the patentee; or
> Whoever...uses in advertising in connection with any unpatented
> article, the word "patent" or any word or number importing that the
> same is patented for the purpose of deceiving the public. . . Shall
> be fined not more than $500 for every such offense.

Section 292 is penal in nature and must be strictly construed. *Mayview Corp. v.
Rodstein*, 320 F.3d 1347, 1359 (9th Cir. 1980.)  The Ninth Circuit found in *Mayview Corp.* that
the statute requires four elements be established in order to sustain a violation: "(1) a marking
importing that an object is patented (2) falsely affixed to (3) an unpatented article (4) with intent
to deceive the public." *Id.*  Although that case states that the patent must be "affixed" to an
unpatented article, the statute states "or use[d] in advertising." 35 U.S.C. § 292. *See also
Laughlin Products, Inc. v. ETS, Inc.*, 257 F. Supp. 2d 863, 870 (N.D. Tex. 2002) ("...plaintiff
must show that the advertising or use of the word 'patented' is made in conjunction with a
device which is not patented...") Thus, RSS's argument that the patent was not affixed to its
products is of little import.

As for the fourth element, the Federal Circuit recently recognized that "[i]ntent to deceive
is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not
so and consequently that the recipient of its saying will be misled into thinking that the statement
is true." *Clontech Labs v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005).  Plaintiffs
have the burden of showing that defendants acted with specific intent to deceive the public.

*Sadler-Cisar, Inc. v. Commercial Sales Network, Inc.*, 786 F. Supp. 1287, 1296 (N.D. Ohio 1991).  This intent is subjective in nature but measured by objective criteria.  *Clontech*, 406 F.3d at 1352.  Thus, by objective standards, "the fact of misrepresentation coupled with the proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent."  *Id*.  A party will not escape statutory liability by merely asserting that it did not intend to deceive.  If there is knowledge of falsehood, an assertion of no intent to deceive is worthless.  *Id*.  However, intent will not inferred from facts which show that the incorrect patent marking was the result of mistake and inadvertence.  *Johnston v. Textron, Inc.*, 579 F. Supp. 783, 795 (D. R.I. 1984).

Additionally, the court in *Clontech* stated that "to establish knowledge of falsity the plaintiff must show by a preponderance of the evidence that the party accused of false marking did not have a reasonable belief that the articles were properly marked (i.e., covered by a patent)."  *Clontech*, 406 F.3d at 1352-53.  If the plaintiff cannot prove this lack of reasonable belief, then there will be no liability under the statute.  *Id*. at 1353.  In other words, this element is satisfied with evidence that the patent holder marked a product without a good faith belief that the patent included a claim that covered the product.  *DP Wagner Mfg., Inc. v. Pro Patch Systems, Inc.*, 434 F. Supp. 2d 445, 456 (S.D. Tex. 2006).  Typically, the question of whether conduct amounts to the necessary deception required by the statute is a question of fact.  *United States Gypsum Co. v. Pacific Award Metals, Inc.*, 438 F. Supp. 2d 1101, 1106 (N.D. Cal. 2006).

At the summary judgment stage in one case, a court noted that the plaintiff had "alleged no facts showing an intent to deceive, relying instead on the mere fact of reference to the patent...[however,] the plaintiff [did] allege that the defendants, after removing the reference to

the specific patent number, still left in language suggesting the [product] was patented." *Blank v. Pollack*, 916 F. Supp. 165, 173 (N.D.N.Y. 1996). Because of that allegation, the court found there was a question of fact precluding summary judgment. *Id.* It went on to explain that "[a]ccording to the express terms of the statute, even if the initial reference to a specific patent number was inadvertent, and removed, a later reference to the [product] being patented, assuming it is not, would raise a factual issue as to the intent behind such a reference." *Id.*

In another case, the defendants had included a patent legend on their invoices and plaintiffs contended that the timing of the inclusion of this was significant because it coincided with the defendants mailing cease-and-desist letters to the plaintiffs' customers, asking them to remove items from their catalogs that had defendants' patented design. *Accent Designs, Inc. v. Jan Jewelry Designs, Inc.*, 827 F. Supp. 957, 969 (S.D.N.Y. 1993). According to the plaintiffs, the inclusion of the patent legend was part of the defendants' intentional strategy to intimidate the plaintiffs' customers from no longer doing business with them. *Id.* The defendants responded that the use of these invoices was insignificant because only a small percentage were invoices which did *not* include products covered by the patent and those were generated to avoid the "headache" of creating separate invoices. *Id.* When resolving all doubts in favor of the plaintiffs, the nonmoving party, the court found that a reasonable jury could find that the defendants intentionally included the patent legend on their invoices for the purposes of unfairly competing for business and to give the misleading impression that the defendants' products are unique and not legally available through competitors such as the plaintiffs. *Id.* at 969-70. Thus, summary judgment was not granted to the defendants. *Id.* at 970.

A genuine issue of material fact precluded summary judgment in another case where the

plaintiff's complaint contained statements that the mismarkings were knowingly made by the defendant with an intent or purpose to deceive and an affidavit of defendant's vice-president stated that there was no intent to deceive and that the patent markings and representations were accurate.[4] *Channel Master Corp. v. JFD Elec. Corp.*, 260 F. Supp. 568, 573 (E.D.N.Y. 1967).

Defendant RSS did place the Rodex 4000 patent number in some marketing brochures for the Rodex 4000 Plus, Rodex 5000 Plus and Rodex 6000. (*See* Meyer Aff., Exs. B and C.) However, RSS maintains that these patent references were "inadvertent" and that it has removed these references. It also asserts it had the legal right to the patent. (*See* Edson Aff., Ex. C; Stout Aff., Exs. C and E.) However, RSS did in fact mismark the brochures with a patent number that did not pertain to the products featured. The fact of misrepresentation is one element that can lead to an inference of an intent to deceive and that fact exists in this case. *See Clontech*, 406 F.3d 1347. However, the other element needed is knowledge of the falsity. *See id*. The burden is on the plaintiff to prove this specific intent to deceive. RSS says the reference was inadvertent and Plaintiffs disagree. There is a genuine issue of material fact as to whether Defendant RSS had the requisite intent to deceive the public when it placed the patent number on its brochures. Therefore, the Court will not grant summary judgment to the Plaintiffs on this claim.

**B.      Lanham Act**

In their argument for summary judgment on the Lanham Act violation, Plaintiffs submit that, in connection with the interstate marketing and sale of its products, RSS has misrepresented the source of its products in many instances including: holding itself as the original Rodex Industries; placing testimonials and press releases that refer to the original Rodex Industries in

---

[4] The motion in that case was brought as a Rule 12(b)(6) motion to dismiss but the court treated it as a motion for summary judgment. *Channel Master*, 406 F.3d 1347.

its advertising brochures and materials, thus falsely attributing those testimonials and press releases to RSS's products; placing the original Rodex Industries instruction manual on its website which includes pictures of the original Rodex Industries products not manufactured by RSS; additionally, in that instruction manual, providing an "800" service number which is owned by Meyer and not RSS; offering customers a training video that shows Meyer demonstrating the original Rodex 4000 manufactured by Rodex Industries; and at trade shows, representing its company is the original Rodex Industries and falsely stating that the original company did not go bankrupt and that RSS has been continuously in business as the original Rodex Industries for the past six years.  Plaintiffs maintain that RSS undertook these commercial activities with the purpose and intent of misleading and confusing customers and prospective customers as to the source of its product and its identity in relation to the original Rodex Industries.  Plaintiffs submit that this was done to obtain a competitive advantage over Meyer and others in the business of selling rodent exterminating equipment.

In response, Defendant RSS submits that Plaintiffs have failed to state a Lanham Act "misrepresentation of origin" claim.[5]  RSS urges that after a 2003 United States Supreme Court case, § 43(a) of the Lanham Act only encompasses claims involving the origin of the physical good, but not the ideas or concepts which are embodied in that good.  *See Dastar Corp.v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003).  It argues that there is no allegation in this case that RSS is either selling the goods of others as its

---

[5]  Plaintiffs actually allege that Defendants have violated 15 U.S.C. § 1127 which is a construction and definition section.  RSS, in its Response of the Defendant Rodex Sales to the Motion for Partial Summary Judgment, filed on July 14, 2006, point this fact out and instead address the alleged Lanham Act violation as a violation of 15 U.S.C. § 1125, also referred to as § 43 of the Lanham Act, which is false designations of origin, false descriptions, and dilution forbidden section.

own or that it is selling its own goods as those of others and thus there can be no Lanham Act

violation. It maintains that as it purchased and owns the intangible assets of Rodex Industries, it

acquired the right to use that goodwill in the marketing of its own products.  RSS asserts that as

the claims Plaintiffs have made under the Lanham Act do not fall within the origin of a tangible

good itself, they have not established a right to recovery under the Lanham Act and thus

summary judgment should be entered for RSS and not Plaintiffs.

     **1.**    **Discussion**

    15 U.S.C. § 1125(a), "Civil Action," also known as Section 43(a) of the Lanham Act

provides:

> (1) Any person who, on or in connection with any goods or
> services,...uses in commerce...any false designation of
> origin...which - (A) is likely to cause confusion, or to cause
> mistake, or to deceive as to the affiliation, connection, or
> association of such person with another person, or as to the origin,
> sponsorship, or approval of his or her goods, services, or
> commercial activities by another person, or (B) in commercial
> advertising or promotion, misrepresents the nature, characteristics,
> qualities, or geographic origin of his or her or another person's
> goods, services, or commercial activities, shall be liable in a civil
> action by any person who believes that he or she is or is likely to
> be damaged by such act.

This section prohibits actions like trademark infringement that deceive consumers and impair a

producer's goodwill.  *Dastar Corp*., 539 U.S. at 32.  For example, it forbids Coca-Cola

Company's passing off its product as Pepsi-Cola or, in reverse, passing off Pepsi-Cola as its

product.  *Id*. at 32.  The Lanham Act does not cover matters that are of no consequence to

purchasers.  *Id*. at 32-33.  A key purpose of the Lanham Act is avoidance of confusing the

public.  *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1981).

    The United States Supreme Court in *Dastar Corp.* found the phrase "origin of goods" to

mean the "producer of the tangible goods that are offered for sale, and not the author of any idea, concept or communication embodied in those goods." *Id*. at 37.  Accordingly, the statute could essentially be read as creating an action for false designation of the "producer of the tangible goods that are offered for sale." *See id.*

Palming off or passing off is the selling of a good of one's own creation under the name or mark of another.  *Smith v. Montoro*, 648 F.2d 602, 604 (9th Cir. 1981).[6]  A claim of passing off generally focuses on the likelihood of the customers' confusion and involves a comparison between the two products.  *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1428 (3rd Cir. 1994).  This "passing off" can either be express or implied.  *Smith*, 648 F.2d at 604.  Express passing off arises when a company labels goods or services with a mark[7] identical to that of another company, or otherwise expressly misrepresents that the goods originated with another company.  *Id*.  Implied passing off occurs when a company uses a competitor's advertising material, or a sample or photograph of the competitor's product, to impliedly present that the product it is selling was produced by the competitor.  *Id*.

Defendant RSS does not dispute that it had pictures on its website and in brochures of the Rodex 4000 or that it put testimonials and press releases in its advertising brochures and materials that refer to the original Rodex Industries and its products.  (*See* Meyer Aff., Exs. B-H.)  However, it does argue that it inherited the goodwill and general intangibles of Rodex

---

[6]  This case uses the word "selling" but the statute states "uses in commerce." Additionally, the Supreme Court in *Dastar* stated that passing off is "misrepresenting," indicating that the goods do not to be sold in order to be within the statute. 539 U.S. at 28, n. 1.  Subsequently, it does not appear a good must actually be sold for there to be a violation under the Act.

[7]  Although many cases brought under the Lanham Act deal with trademark infringement, § 1125(a)(1) is not limited to the protection of trademark holders and the existence of a trademark is not a necessary prerequisite to an action under this section.  *Zyla v. Wadsworth*, 360 F.3d 243, 251 (1st Cir. 2004).

**Memorandum Decision and Order - Page 17**

Industries and thus has the right to use these things.

The Court recognizes it has the power to grant summary judgment, sua sponte, to the nonmoving party if the moving party's case could not be proved at trial. The Court does believe, and Plaintiffs recognize to a certain extent, that there are serious questions as to whether Plaintiffs even have a claim under the Lanham Act. However, the Court does not find that summary judgment should be granted in Defendant RSS's favor at this time as there is still a great deal of confusion surrounding the bankruptcy and exactly what RSS obtained, via Malheur Development, from Zion's Bank, the secured creditor of Rodex Industries. Additionally, there is a question of who actually held the patent, Rodex Industries or Dan Newton and Monte Meyer. Thus, summary judgment on this claim is denied to both parties.

**C.     Right to Privacy/Commercial Appropriation of Image**

Plaintiffs urge that Meyer has a protectible legal interest in his name and likeness. In the course of representing Rodex Industries' product line, Meyer created an advertising/training video in which he appeared and demonstrated the operation of the Rodex 4000. He also appeared in a sales brochure produced by Rodex Industries ("Meyer brochure"). Plaintiffs allege that RSS has used the Meyer video and Meyer brochure in the sales and marketing of its products since December 2003 until the time the complaint was filed in this case. By representing that the video depicts the demonstration of its products, Plaintiffs allege that this impliedly represents that Meyer approves, endorses and promotes the products produced by RSS when in fact he is in direct competition with them through his own independent product line. They assert that the use of this video and brochure disparages Meyer's person, business and products and violates his right to privacy by appropriating his likeness for RSS's commercial

advantage and by placing Meyer in a false light in relation to his own product line, and his present and prospective distributors and customers.  Additionally, based on their other allegations, Plaintiffs assert that by using Meyer's likeness in the marketing of these products, RSS has falsely implicated Meyer in a scheme to defraud the general public and thus has subjected him to the possibility of civil and/or criminal liability for consumer fraud.

        1.       **Pendent Jurisdiction**

In response, Defendant RSS first argues that because Plaintiffs' claims under the Lanham Act and the False Marking Act fail**,** that the Court should decline to exercise pendent jurisdiction over Plaintiffs' remaining state law claims and dismiss the entire action.  It urges that when all of the federal claims are dismissed in the early stages of a proceeding, as it believes they should be here, then the court should decline to exercise further jurisdiction and dismiss the remaining state law claims.

28 U.S.C. § 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction.  As to whether the claims should be dismissed or the case remanded to state court, the United States Supreme Court stated that there is good reason "to grant federal courts wide discretion to remand cases involving pendent claims when the exercise of pendent jurisdiction over such cases would be inappropriate," especially since dismissal of the claims would increase both the expense and time involved in enforcing state law.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353, 108 S.Ct. 614, 620, 98 L.Ed.2d 720 (1988).  *See also Executive Software N. Am., Inc. v. United States Dist. Court for Cent. Dist. of California*, 24 F.3d 1545 (9th Cir. 1994).

**Memorandum Decision and Order - Page 19**

Defendant RSS is correct in its assertion that if this Court were to grant summary judgment on Plaintiffs' federal causes of action under the False Marking Act and the Lanham Act, then it should remand the state causes of action to state court.  However, as this Court is not granting summary judgment on Plaintiffs' federal claims, it thus retains jurisdiction over the state law claims.

### 2.       False Light Claim

As to the false light claim, RSS first responds to Meyer's argument that he was an "independent contractor" rather than an "employee" of Rodex Industries.  RSS claims that Meyer was an employee and not an independent contractor under the "right to control" test followed in Idaho.  *See Casey v. Sevy*, 129 Idaho 13, 921 P.2d 190 (Ct. App. 1996).  As such, it argues there is no substance to any claim that Meyer makes that his right to privacy claims are in some way enhanced by his alleged status as an independent contractor.  The Court does not find it necessary to address this distinction and its implications at this time.

RSS maintains that to make out a false light claim, a false statement must be made and as there has been no express or implied false statement about Meyer, summary judgment should be entered for RSS.  *See Hoskins v. Howard*, 132 Idaho 311, 971 P.2d 1135 (1998).  It also points out that the only allegation Meyer is making is that he appeared in the video on its website demonstrating a product, the Rodex 4000, that neither party currently markets.

Idaho recognizes a cause of action for publicity which places the plaintiff in a false light in the public eye.  *Id*. at 316; 971 P.2d at 1140.  One of the elements of this cause of action is some public disclosure of falsity or fiction concerning the plaintiff.  *Steele v. Spokesman-Review*, 138 Idaho 249, 253, 61 P.3d 606, 610 (2002).  If the publication if free from material falsehood,

recovery cannot be had.  *Id.*

The Restatement Second of Torts states a defendant will be liable for invasion of privacy by placing another in a false light if the false light is "highly offensive to a reasonable person" and the defendant "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  RESTATEMENT (SECOND) OF TORTS § 652E.

The Court finds there is genuine issues of material fact that preclude summary judgment on this issue, particularly whether a reasonable person would find the conduct complained of highly offensive.  The Court believes that reasonable jurors could differ on whether the alleged false light Meyer was placed in was highly offensive or not and therefore summary judgment is not appropriate and will be denied.

### 3.	Appropriation of One's Name/Likeness Claim

As to the appropriation claim, RSS first points out that there is a difference between an invasion of privacy by appropriation of name or likeness and a "right of publicity" cause of action, the latter of which has not been expressly recognized in Idaho. The appropriation cause of action seeks to protect a privacy interest whereas the right of publicity cause of action seeks to protect an economic interest.  *See PETA v. Bobby Berosini, Ltd.*, 895 P.2d 1269 (Nev. 1995). RSS calls attention to this distinction because it submits that Meyer must show his privacy interest was injured by the use of his name and/or likeness to the advantage of RSS. Additionally, since Meyer has continued to "voluntarily project himself before the public" as a competitor to RSS, it submits that this is inconsistent with a person who allegedly wants to preserve his privacy and thus Meyer will not succeed in claiming any injury to his privacy

interest.

RSS also argues that Meyer's name and image were originally used, with his consent as an employee, in the marketing materials developed by the Rodex Industries and these materials were part of the intangible assets purchased by RSS from the bankruptcy estate giving it a right to use them. (Stout Aff., ¶ 18.) From December 2003 until November 2005, RSS does admit to intermittently using the Meyer tape and asserts that due to the investment of time, money and effort in an employee, an employer may use an employee's image for a reasonable period of time after termination of the employee's employment. (Stout Aff., ¶ 3.) *See Alonso v. Parfet*, 325 S.E.2d 152 (Ga. 1985). Additionally, as one of the elements to this cause of action, RSS asserts that Meyer must prove damage to his protectible privacy interest and since there is no evidence to establish this damage, summary judgment should be entered for RSS and not for the Plaintiffs.

Idaho recognizes actions for invasion of privacy when they fall into one or more of the following four categories: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name and likeness. *Hoskins*, 132 Idaho at 316; 971 P.2d at 1140. It seems Defendant RSS is correct in its contention that Idaho has not recognized a right of publicity cause of action.

No Idaho appellate cases have dealt with the appropriation tort, besides stating that it does not require an invasion of something secret or private to plaintiff nor does it require falsity but it does require use to the defendant's advantage. *See Peterson v. Idaho First Nat'l Bank*, 83 Idaho 578, 584, 367 P.2d 284, 287 (1961). However, the Ninth Circuit has detailed what is

required to make out a common law commercial misappropriation of privacy claim: (1) defendant's use of plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) a lack of consent and (4) resulting injury. *Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1088 (9th Cir. 2002).

There is some merit to Defendant RSS's argument that since Meyer was a former employee of Rodex Industries, and it acquired the intangible assets from that company, it had the right to use the video with his image for a reasonable period.  There is caselaw that states an employer will have a reasonable amount of time to halt use of the employee's name.  *See Alonso*, 325 S.E.2d at 750.   However, another case, originated in that same state, held that the employer had no more right to "exhibit [the plaintiff's] picture for commercial purposes" after termination of her employment "than it did to require her to appear in person." *Colgate-Palmolive Co. v. Tullos*, 219 F.2d 617, 619 (5th Cir. 1955).  Additionally, if use of an employee's photograph in an employer's ad is merely incidental, there will be no liability.  *Staruski v. Continental Tel. Co. of Vermont*, 581 A.2d 266, 270 (Vt. 1990)**.**

The Court finds there to be genuine issues of material fact that preclude summary judgment on this claim.  As for the third element of "consent," it is questionable whether RSS did obtain the rights to the video, how the rights were obtained if they were and if they were obtained because Meyer was a former employee, what amount of time was reasonable to continue using the video when he was no longer an employee.

As to RSS's argument that Meyer could not prove damages in terms of his personal interest in privacy, the Court disagrees.  The Court believes it is possible for Meyer to prove injury in terms of "mental anguish" suffered from having his image and likeness used to promote

the products of his company's competitor.  Accordingly, the Court will not grant summary

judgment to either the Plaintiffs or RSS as it finds there are genuine issues of fact regarding

whether RSS had the right to use the video, and if so, for how long and whether Meyer actually

suffered an injury.

## **<u>ORDER</u>**

Based upon the foregoing, the Court being otherwise fully advised in the premises, the

Court **hereby ORDERS that:**

    1)    The Plaintiffs' Motion for Partial Summary Judgment as to Liability (Docket No.

16), filed July 14, 2006, be DENIED.



DATED: November 16, 2006

_____

Honorable Mikel H. Williams
United States Magistrate Judge